Good morning, your honors, and may it please the court. My name is Kathleen Shen, and I'm here on behalf of the appellate, Mr. Lazaro Martinez Romero. We're here because the district court gave no reason for its decision to impose a partially consecutive sentence for Mr. Martinez's supervised release violation. Did you ask for reasons after the sentence was imposed? No, your honor, he didn't, which is why we're... Wouldn't that be a good time to ask? Yes, your honor. However, Mr. Martinez Romero's failure to ask for those reasons has resulted in this being up on appeal on plain error, which we believe we can meet that standard. To explain why the error was plainly erroneous, the district court gave no reason for the supervised release sentence at all. There's no discussion or reference to any of the section 3553A factors other than the guidelines range, and even looking to the broader context of the sentencing hearing doesn't provide any reasoning that we can infer or import into that decision either. Under this court's decision in United States v. Rose, that violates section 3553C and constitutes plain error. In addition, that error affected Mr. Martinez's substantial rights in that it undermines confidence in the outcome. In this case, an adequate verbal explanation might have changed the outcome because it would have or might have entailed the district court giving more consideration to the mitigating individual characteristics of Mr. Martinez, such as the fact that his offense was motivated by his desire to support his family, as well as the fact that his criminal history category of five in this case was due in large part to stale, nonviolent convictions, as well as to the fact that he was a convicted felon. Two points which were added because he had violated the terms of the supervised release. Were those points argued? No, Your Honor. But, again, I believe that that is rolled into the fact that we're here on plain error. So at the sentencing hearing, now, I know you didn't challenge the lack of reasoning by the district court, but at the sentencing hearing, did counsel for the defense go through the background of the defendant and explain to the court his situation? I believe that the defense counsel did discuss Mr. Martinez's motivation for coming into the country and that this was part of the reason why defense counsel and the judge and the prosecutor agreed that a low-end guideline sentence was appropriate under the sentencing. So the court already had that information? The court had that information. However, the court didn't refer to or address that information in the course of making its sentencing decision and didn't address or refer to that information when deciding to impose this additional four-month sentence for the supervised release violation. And just to return to what I was discussing before, I think the additional two criminal history points that he received for having violated the terms of his supervised release is significant here because that alone increased his guidelines range from 30 to 37 months. And I believe under these circumstances, you know, to paraphrase the Ninth Circuit, had the district court gone to the effort of explaining why an additional four months was necessary when he was already receiving an increased sentence because of this prior supervised release violation, he might have changed his mind, particularly in light of the fact that everyone agreed that a low-end sentence was appropriate, and the district court in this case decided not to impose supervised release because that's not generally recommended under the guidelines. Well, the court repeated its decision that he was going to do it this way several times. It was not just a mistake. Yes, Your Honor, I understand. He made it extremely clear. He was clear that he was imposing a 41-month sentence. However, he didn't give any reasons for the imposition of that sentence. Well, he said the reasons being – I mean, no, you're right, he didn't give the reasons, but it's clear he understood what he was doing. He was giving 37 months plus the four consecutive, and he said, so that's a total of 41 months, right? He said, right. He said that's the bad news. He clearly understood exactly what he was doing. Yes, Your Honor, he understood. And you suggest that he didn't, but I don't know how you can get there with that exchange between defense counsel and the court. You know, I don't think that I have to show that he was mistaken or, you know, misunderstood what he was doing. Rather, that had he gone to the effort of explaining his decision, which was a plain error in this case, whether there's a possibility sufficient to undermine our confidence in that outcome. And here, I think that we can look to the record and look to a few things to suggest that there is that possibility. Again, first, that there's this lack of reasoning, which, you know, I believe is – the reason we require courts to give their reasoning is because the articulation of reasoning sometimes has an impact on our final decision. It sure doesn't take a genius to figure out why he wanted to sentence this person the way he sentenced it. The guy is a scofflaw. I mean, it's just apparent on the face of it. He gets deported. He comes back in. He gets sentenced and deported. He comes back in. So what more do you need to know about what he intended to do? Respectfully, Your Honor, I don't believe there's anything in the sentencing record that indicates that the district court's sentencing decision was based on his belief that Mr. Martinez-Romero was a scofflaw or, you know, based on his failure to follow the law. Had that been the case, the district court surely could have articulated that reasoning. But all we know is that he believed that the lowest possible sentence under the guidelines was appropriate in this case. And, again, you know, there's nothing – I believe that on this record, given that the district court gives no reasons for the decision to oppose the additional 47 months, you know, we can speculate as to what the district court's reasoning might be. But, in fact, this is – you know, we are in the zone of appellate speculation, as this court recognized in Rose and in Underwood. There's nothing that we can go on other than our speculations as to what a district court might have done based on Mr. Martinez' individual – Well, the length of time that you're concerned with – are you concerned with the 37 months? No, Your Honor. You're only concerned with the four consecutive? Yes, Your Honor. On the supervised release. Yes, Your Honor. I thought you gave us a different number just now.  Yes, Your Honor. Okay. And to the extent that there is any reasoning in the record, all that reasoning goes to why the 37 months was imposed. We don't have any additional reasoning for the four-month sentence. And, again, you know, given this lack of reasoning and in combination with, you know, potentially mitigating individual characteristics of Mr. Martinez as well as potentially mitigating qualities of the offense, you know, I think that we can't say that we're confident that the district court would have done the same thing had he followed this long-established principle that the district court is required to give consideration to these individual characteristics and explain the decision to impose a consecutive sentence in those terms. You know, finally, I would just say that the district court's decision affects the fairness, integrity, and public reputation of judicial proceedings. The lack of explanation in this case has deprived the public of any knowledge of why this additional sentence was imposed, and in that way it undermines the perception of fairness. In addition, it precludes meaningful appellate review of the district court's reasoning. As we've seen here, we're left to speculate as to why the district court might have decided to impose this additional four months. And is a consecutive sentence or violation of supervised release required under the guidelines? I don't believe it's required under the guidelines, though that may be the guideline recommendation. However, that's not what the district court... 71.3 if? I'm not sure, Your Honor. Okay. However, in this case, you know, they imposed a 50 percent concurrent, 50 percent consecutive supervised release sentence, which is also something that, you know, isn't explained on the record. And, you know, that isn't explained by the guidelines either. Well, but the guideline that I just listed says, any term of imprisonment imposed upon the revocation of probation or supervised release shall be served consecutively to any sentence of imprisonment that the defendant is serving. Yes, Your Honor. And that is a possible reason that the district court might have imposed a consecutive term. Shall be. I mean, the court had to. If you read shall be, it's shall be consecutive. Two responses. First, the district court didn't strictly follow the guideline anyway. The district court imposed the sentence partially consecutively. So four months concurrent, four months consecutive. So I think that limits the explanatory power of the guidelines, even if we assume that that was the district court's intent. Second, there's no requirement that the district court follow the guideline with respect to the supervised release violation, unlike the sentence for the underlying offense. This wasn't a C1C. And the district court was, in fact, free to impose a fully concurrent sentence or to impose no sentence at all. This wasn't a C1C sentence? Yes, Your Honor. My understanding is that while the underlying conviction that he pleaded guilty to, that plea agreement was a C1C sentence that she was required to follow the guidelines. However, that requirement did not apply to the additional supervised release violation. Just finally to return to my fourth prong argument, you know, in this case, I think one of the most important things to recognize is there's really no record that Mr. Martinez-Romero was considered as an individual. There's no discussion of his history and characteristics by the court or even reference to the 3553A factors. You know, there's nothing to show that he wasn't sentenced as just another standard fast-track defendant. And so if there are no further questions, I'd like to reserve my remaining time for rebuttal.  Thank you. Thank you. May it please the court. John Bala for the United States. Martinez has failed to show that the district court plainly erred in not explaining why it ran four months of his eight-month supervised release replication sentence consecutively to his new 37-month sentence for illegal reentry. First, because he hasn't shown that the district court was obliged to explain that decision at all. And second, because he hasn't shown that any error, if it occurred, in declining to explain that decision affected his substantial rights. I've argued in my brief why the statutory scheme between 3553 and 3584 don't require a district court to explain this particular decision. But moving on and assuming that an error did occur when the district court declined to explain why it was running Mr. Martinez's supervised release sentence partially consecutive and partially concurrent to his underlying sentence for illegal reentry, he still hasn't shown that that failure of explanation affected his substantial rights. He has to show a probability sufficient to undermine confidence in the outcome, and he has to show that had the district court given an explanation, there's a fair probability that it would have resulted in something different. Martinez argues that he doesn't have to show that the district court was mistaken in pronouncing a partially consecutive sentence, but given the argument that he makes in his brief, he really does. All he points to are these two comments that the district court made, indicating that it was imposing the lowest sentence that it could impose under the party's 11C1C fast-track agreement, and that it was imposing a revocation sentence at the low end of the commission's policy statements. Now, he argues that these comments indicate that the district court wanted Martinez to face the lowest amount of imprisonment possible, given those, I guess, the constraints of the 11C1C agreement and the constraints of the commission's policy statements, though they're only advisory. But the district court repeated its pronouncement twice, including the pronouncement of partially consecutive and partially concurrent sentences. So given that, there's just no possibility in the record that the district court made any sort of mistake that would have been corrected with a brief explanation about why it was running the sentences partially consecutively and partially concurrently. Does it have to make any explanation? I argue in the brief that it does not have to explain anything at all, but even assuming that it does have to give an explanation for why it's running sentences consecutively or concurrently, Rodriguez-Quintanilla shows you exactly how little that explanation needs to be. In that case, cited in the United States' brief, the court stated that a district court sufficiently explains its decision to run sentences consecutively to one another when it's a revocation of supervised release and an underlying sentence, merely by stating that it relies on Guidelines Section 7B1.3's recommendation of fully consecutive sentences. So had the district court explained its decision in this case, all it needed to say was, I'm relying on the guidelines in making my decision, and that would have been a sufficient explanation. So given that it needed to state so little, there's just no possibility under the record that stating that cursory, conclusory statement would have resulted in anything different. Martinez failed to show that the district court erred at all in declining to explain its decision about concurrent or consecutive sentences, and even assuming there was an error, he hasn't shown that the error affected his substantial rights, given the district court's repeated pronouncement of consecutive sentences, showing that it wasn't a mistake. He, therefore, didn't demonstrate plain error, and the court should affirm his sentence. If the panel has no further questions, I'm happy to respond. You don't want to talk about your novel theory? I thought that's why we were here. That is why we're here. The court didn't seem very interested in it with Ms. Shen, though, so I wasn't sure if the court … Well, it's not her issue. True. So Section 3553C only requires an explanation of a particular decision. If that decision is the imposition of a particular sentence, and so in this case a decision about ordering sentences running consecutively or concurrently is only covered by 3553C if it's either itself the imposition of a particular sentence or if it's included in the imposition of a particular sentence. Your brief made an interesting argument on this point, but I didn't understand your argument about why we didn't already directly address this issue We didn't obviously direct this or answer your argument because that argument wasn't made in Rose, but we certainly answered this issue. And why isn't Rose controlling? I appreciate you thinking that the argument is interesting. In Rose, though, that case really wasn't a case about whether Section 3553C generally applies to decisions about running sentences consecutively or concurrently. The only argument that that court addressed and the only argument that the parties advanced was an argument about whether Section 3553C imposes any general explanation requirement aside from the two specific explanation requirements in its two enumerated subsections. The court basically assumed that Section 3553C applied to decisions about running sentences consecutively or concurrently, and true, it did vacate the sentence in that case and remanded, but it did so only after assuming that Section 3553C applied in that case. And given that that issue was not squarely addressed by the court, it was merely assumed, it doesn't make sense to treat Rose as a holding about Section 3553C's general applicability to decisions about concurrent or consecutive sentences. So you think when the court pronounces a sentence and says whether it'll run concurrently or consecutively with other sentences, that is not part of the sentence imposed? That is not part of any particular sentence imposed for the statutory interpretation reasons given in the brief. First, Section 3584B would be entirely superfluous, if it were. Section 3584B in the entirety of the statute. Isn't that really just a housekeeping provision to help the Bureau of Prisons calculate time? I think you're thinking of 3584. Well, there's several of them in that particular area in the statute. When the court doesn't say one way or the other, this gives those who count days and years something to fall back on. It's a default administrative rule. So Section 3584C is the provision stating that the Bureau of Prisons shall administratively treat consecutive or concurrent sentences as one aggregate sentence. Section 3584A sets forth the default provisions about whether sentences run consecutively or concurrently when a district court says nothing at all about the decision that it's making. And then Section 3584B, the provision that I was referring to, is the provision that incorporates the Section 3553A factors and tells district courts that when they're making a decision about whether to run sentences concurrently or consecutively, they shall consider for each offense the factors in Section 3553A. And that would be entirely superfluous if the decision to run a sentence consecutively or concurrently were itself a particular sentence imposed or part of a particular sentence imposed. Because Section 3553A already tells district courts that when you're imposing a particular sentence, you need to consider these factors. And Congress would have no reason to put in Section 3584B if that decision were part of a particular sentence imposed. Section 3553A would already do the work by its own language. Further, the fact that 3584A provides default rules when a district court says nothing at all indicates that Congress specifically contemplated that it was okay not to explain this particular decision. That subsection states that when sentences are imposed at the same time, the default presumption is that they run concurrently. And when they're imposed at different times, the default presumption is they run consecutively. Do you have any case that's followed your interpretation of the statute? I'm sorry, Your Honor? Do you have any case to cite to us that follows your interpretation of the statute? No, Your Honor. I haven't found any cases that follow this interpretation, though I haven't found any cases that even discuss the general applicability and analyze the general applicability of 3553C to decisions about concurrent or consecutive sentences. So I'm not aware of any case that's particularly rejected it either. You say Rose didn't cover that, but Judge Murphy in Rose says, Rose contends that even if the district court need not weigh 3553A factors on the record, it must still state in open court pursuant to 3553C the reasons for imposing consecutive terms of imprisonment. And he says the government responds that that section is not applicable to cases in which a sentence doesn't exceed 24 months. Wasn't that the time for the government to make the argument you're making today? True. And I don't understand how you can say we didn't resolve it. Even if you're suggesting we didn't correctly resolve it, we resolved that issue, and the government had a chance to make this argument. So true. But looking at the analysis that the court performed, though, it was only a case discussing whether 3553C imposed the general explanation requirement and then in stating its conclusion on that issue, it states, Accordingly, this court rejects the United States contention that section 3553C is not applicable to this case because neither of Rose's sentences exceeded 24 months. But what would have prevented you from making the argument you're making now? I think you rely on a Ninth Circuit case that's come out since then, but still there's nothing that would have prevented you from saying at that point, oh, why, there is a reason you shouldn't find that 3553C applies, and here it is. To me, it's just an argument you didn't make because maybe nobody thought of it, but still, Rose controls. There's nothing that prevented us from making that argument then, and a legal holding is nothing more than a principle that you draw from a case to aid you in deciding a future case. And just when looking at Rose, it doesn't make much sense to say that looking at the reasoning in that case helps us decide whether section 3553C applies generally to decisions about concurrent or consecutive sentences. And so in that sense, I don't think it's a holding of Rose. So again, 3584A's presumptions indicate that Congress specifically contemplated that courts weren't going to even state the decision that they were making about consecutive or concurrent sentences on the record. So it doesn't make sense to say that they're required to explain that decision when Congress provided default rules in the event that they said nothing at all. So had the district court said nothing at all, then section 3584A would have implicitly sanctioned what the district court did. But the fact that it decided to say something shouldn't indicate that it has an indication that it has a requirement to explain that decision, even when it was more defendant friendly. If the panel has no further questions, I'm happy to return the rest of my time to the court. Thank you. I'd like to just make a few points in response to the government's arguments. First, the proposition that section 3553C, that the duty contained in that statute applies to the decision to impose consecutive sentences, is necessary to the outcome in Rose, and it's part of that holding. And as to the C1 versus C2 argument, I just would note that this court had already previously rejected that argument in Underwood, and so it would be somewhat unusual to say that Rose was confined to merely confirming that point. And then I just want to return to the government's arguments about the third and fourth prongs of the plain error standard. First, I just want to emphasize that our third prong burden is to show merely that there is a probability sufficient to undermine confidence in the outcome of the proceeding, and not to show by a preponderance of the evidence that the outcome would have been different. I want to just say here again that sort of fundamental to this whole exercise is the principle that sometimes articulating the reasoning that we have for a decision affects what we think. That's why we're here. And so I think that in this case, given that there's nothing in the record going to the district court's reasoning for imposing a four-month consecutive term, we have nothing to show us what the district court was thinking. That, in combination with the fact that there are some reasons to believe that the additional four months was unnecessary, and the other indications the district court gave that he believed that a low-end sentence was appropriate under the circumstances, I believe, meets our burden of undermining confidence in the outcome. And last, I just want to note, you know, the government talks about how little is required to satisfy the duty of explanation under 3553C, and I think that the fact that the district court was unable to meet even that minimal burden in this case really shows why our fourth prong burden is met here. All the district court really needed to say was to gesture up the 3553A factors and state on the record that they had been considered. The failure to do so here, I believe, goes even further to show that the error affected the fairness, integrity, and public reputation of the court. And for those reasons, we'd ask that you vacate Mr. Martinez-Romero's supervised release sentence and remand for resentencing. Thank you.